IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 19, 2020 Session

## SKI CHALET VILLAGE OWNERS CLUB, INC. v. RICHARD PATE ET AL.

**Appeal from the Circuit Court for Sevier County**
**No. 16-CV-314-III          Robert E. Lee Davies, Senior Judge**

_____

### No. E2019-00982-COA-R3-CV

_____

Following a jury trial in the underlying contract action and upon a verdict finding misrepresentation/concealment, the trial court entered a monetary judgment in favor of the plaintiff, Ski Chalet Village Owners Club, Inc. ("Ski Chalet"), and against the defendants, Richard Pate and Clint Bowman d/b/a P&B Construction & Remodeling, and J. Ron Dillmon, jointly and severally, in the amount of $166,401.26 for compensatory damages plus $190,000.00 in punitive damages.[1]  The trial court also awarded to Ski Chalet a $1,000.00 judgment against Mr. Dillmon on a separate claim of defamation. Upon Mr. Dillmon's subsequent *pro se* motion, the trial court denied his request for a new trial, finding, *inter alia*, that Mr. Dillmon had failed to meet his burden of providing a valid excuse for his failure to appear at trial, failed to file any pleadings stating the reason for his failure to appear, and refused to testify under oath when given an opportunity to explain his failure to appear.  In addition, the trial court found that an affidavit executed by a physician who had treated Mr. Dillmon, which Mr. Dillmon had filed with his motion for a new trial, did not sufficiently support a valid reason for Mr. Dillmon's failure to appear.  The trial court subsequently denied a motion filed by Mr. Dillmon for production of the trial transcript.  Concerning a motion for the trial court judge's recusal and a motion for contempt against opposing counsel filed by Mr. Dillmon after he had filed a notice of appeal, the trial court entered an order finding that it did not have subject matter jurisdiction to consider either motion.  Mr. Dillmon has appealed. Discerning no reversible error, we affirm.  Upon an issue raised by Ski Chalet, we decline to find the appeal frivolous and deny Ski Chalet's request for attorney's fees and expenses on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

---

[1] Co-Defendants, Richard Pate and Clint Bowman, d/b/a P&B Construction and Remodeling, are not participating in this appeal.

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

J. Ron Dillmon, Jefferson City, Tennessee, Pro Se.

Brian T. Mansfield, Sevierville, Tennessee, for the appellee, Ski Chalet Village Owners Club, Inc.

## OPINION

### I. Factual and Procedural Background

Ski Chalet operates as a property association for owners within the Chalet Village community in Gatlinburg, Tennessee. Ski Chalet filed a complaint on May 4, 2016, against Richard Pate and Clint Bowman, d/b/a P&B Construction and Remodeling ("P&B"); Mr. Dillmon, d/b/a Restoration Services Unlimited; and Joseph M. High, d/b/a CCC&C or Certified Climate Control & Construction, Inc. ("CCC&C") for breach of contract, intentional misrepresentation, conversion and fraud.[2] Ski Chalet averred that on October 17, 2015, it entered into a contract with P&B to repair a swimming pool. Ski Chalet alleged that throughout the construction project, its representatives were alarmed concerning the costs, invoicing, and lack of documentation from P&B and specifically the way the administrator of the project, Mr. Dillmon, had been communicating with Ski Chalet's members. In addition, Ski Chalet alleged that after further investigation, it had discovered that the defendants used a defunct entity, CCC&C, to overcharge Ski Chalet throughout the project.

The defendants each filed a separate answer to the complaint while utilizing the same counsel. This counsel subsequently filed a motion to withdraw from representation of all the defendants, which was granted by the trial court in an order entered on June 21, 2017. On December 29, 2017, Mr. Dillmon, now acting without benefit of counsel, filed a motion to alter or enlarge time, requesting a continuation of the trial date due to a medical condition. Mr. Dillmon stated that he had undergone "at the Mayo Clinic a cardiac catheterization on November 3, 2017." Mr. Dillmon attached to his motion a letter with an electronic signature from Daniel W. Macklin, M.D., with the Executive Health Program at Mayo Clinic in Jacksonville, Florida, addressed "To Whom It May Concern," and dated December 1, 2017. In this letter, Dr. Macklin stated in pertinent part:

---

[2] Ski Chalet voluntarily non-suited Mr. High from this action on January 12, 2018.

2

Mr. Jack R. Dillmon underwent coronary angiography with angioplasty and stent placement in the left anterior descending coronary artery on September 7, 2017. He has a history of chest pain and unstable angina. He is scheduled to return to Mayo Clinic Florida in December for further evaluation and testing.

I believe that it is medically necessary that he avoid the stress of legal proceedings until his cardiac status has stabilized and he has adequately recovered from the recent angioplasty/stent. I anticipate he should be able to proceed with legal proceedings in approximately 6 months (May 2018).

Ski Chalet filed an objection to the motion to alter or enlarge time, attaching, *inter alia*, two contemporaneous *pro se* pleadings filed by Mr. Dillmon in a lawsuit initiated by Mr. Dillmon in the Sevier County General Sessions Court and a 2016 transcript excerpt from a lawsuit initiated by Mr. Dillmon in the Knox County Circuit Court. In the general sessions suit, Mr. Dillmon's pleadings reflected that he had sought a continuance due to his medical condition and subsequently sought to have a default judgment overturned that was apparently entered due to his failure to appear. The transcript excerpt from the circuit court suit reflected that the circuit court judge directed from the bench that the action be dismissed due to Mr. Dillmon's failure to appear for a hearing. Mr. Dillmon subsequently filed a response to Ski Chalet's objection in this action, along with his own affidavit.

Following a discovery dispute between Mr. Dillmon and Ski Chalet, trial court judge Rex Henry Ogle entered an order of recusal on May 10, 2018, transferring this case to Judge Telford E. Forgety, Jr. Another order of recusal was then filed on June 29, 2018, in which Judge Forgety and the other judges of the Fourth Judicial District recused themselves. The Tennessee Supreme Court entered an order on October 1, 2018, appointing Senior Judge Robert E. Lee Davies to hear the case.

Mr. Dillmon filed a "Motion to Stay Trial and Other Civil Proceedings" on October 25, 2018, requesting that the trial court stay scheduling matters, discovery deadlines, and the trial date until criminal proceedings against Mr. Dillmon involving charges of arson and filing false or fraudulent insurance claims were resolved. Ski Chalet filed a response to the motion to stay trial and other civil proceedings, arguing, *inter alia*, that there was no legal basis to grant the motion and that this was an attempt by Mr. Dillmon to delay trial. Following a hearing at which Ski Chalet's counsel and Mr. Dillmon appeared, the trial court entered an order on November 9, 2018, denying Mr. Dillmon's motion to stay upon finding, *inter alia*, that the civil and criminal cases were

"completely different and involve[d] completely different issues" and that Mr. Dillmon would therefore suffer "no hardship" as a result.[3]

In its November 9, 2018 order, the trial court also made various determinations concerning discovery, including confirming that Ski Chalet had given notice that it would not take any depositions in this case and stating that Mr. Dillmon had represented that he intended to take up to sixteen depositions. The trial court directed that Mr. Dillmon would "have until February 15, 2019 to complete any depositions he wishes to take." The trial court set a pretrial conference for February 26, 2019, and set trial for March 13, 2019.

On December 7, 2018, Mr. Dillmon filed a "Motion to Set Aside" the November 9, 2018 order, arguing, *inter alia*, that in denying the motion to stay, the trial court had not properly considered the applicable factors set forth in *Bell v. Todd*, 206 S.W.3d 86, 94 (Tenn. Ct. App. 2005). The trial court entered an order on December 13, 2018, noting that Mr. Dillmon had not filed the motion pursuant to a specific rule of civil procedure and ruling that the court would consider the motion pursuant to Tennessee Rule of Civil Procedure 54.02(1). The trial court set a hearing on the motion for December 20, 2018.

Mr. Dillmon then filed a pleading entitled, "Notice Of Availability And Enlargement Of Time We Beg This Court For An Instant Ruling," on December 14, 2018, requesting that the trial court reschedule the hearing on his motion due to medical treatment that Mr. Dillmon purportedly required. In this "notice," Mr. Dillmon stated in part that he would "be traveling to Mayo Clinic in Jacksonville, FL for scheduled medical care on December 15, 2018." Mr. Dillmon also stated in this document that Ski Chalet's counsel, attorney Brian T. Mansfield, had not acted appropriately and that the trial court judge had exhibited bias throughout the case. Mr. Dillmon did not, however, move for the judge's recusal.

On December 20, 2018, the trial court conducted a hearing for which Mr. Dillmon failed to appear. In an order entered that same day, the trial court explained its decision to proceed with the hearing on Mr. Dillmon's motion to set aside without Mr. Dillmon present, detailing the court's attempts to respond to Mr. Dillmon's motion for continuance by scheduling a teleconference with the parties, in which Mr. Dillmon did not participate, as well as the court's attempts to ascertain whether Mr. Dillmon had traveled to Florida or had decided to stay home, as he had indicated during one telephone call with the trial court judge's assistant. The trial court specifically stated in its order that after waiting twenty minutes to determine if Mr. Dillmon would appear for the

---

[3] We note that Mr. Dillmon refers to this order as the November 7, 2018 order. It was signed by the trial court judge on November 7, but it was entered by the trial court on November 9, 2018. *See* Tenn. R. Civ. P. 58.

hearing, the court decided to review the November 2018 order based on the arguments set forth in Mr. Dillmon's pleadings without hearing argument from Ski Chalet.

In its December 20, 2018 order, the trial court denied Mr. Dillmon's motion to set aside, confirming the court's denial of Mr. Dillmon's motion to stay. In denying the motion to set aside, the trial court concluded that in its November 2018 order, it had "specifically considered the factors set forth in Bell v. Todd" to conclude that "there was no reason to stay the proceedings in this case." The court found that Mr. Dillmon had "present[ed] the same arguments as before as well as other irrelevant and impertinent arguments." The court also "advised" Mr. Dillmon that "the Rules of Civil Procedure and conduct in the courtroom apply equally to lawyers and *pro se* litigants" and that the court would "not condone any further pleadings or communications with the Court or opposing counsel that contain immaterial, impertinent or scandalous matter."

Mr. Dillmon filed a "Motion [to] Come Before This Court in Accordance with T.R.C.P 60.02" on January 18, 2019, again requesting an order granting his motion to stay trial because of his pending criminal case. The trial court entered an order on January 25, 2019, denying the motion upon finding that Rule 60.02 was inapplicable because no final judgment had been entered in the instant action. Mr. Dillmon filed another Rule 60.02 motion on February 1, 2019, which the trial court denied in an order entered on February 6, 2019.

On February 6, 2019, Mr. Dillmon filed a "Motion for Partial Summary Judgment," first asserting that the motion was filed pursuant to Tennessee Rule of Civil Procedure 12.02(6) as a motion for dismissal with prejudice and then asserting that in the alternative, it was a motion for partial summary judgment filed pursuant to Tennessee Rule of Civil Procedure 56. In this motion, Mr. Dillmon insisted that Ski Chalet had eroded its own case by agreeing to Mr. High's dismissal from the action. He argued that Ski Chalet's complaint alleged no specific claim against Mr. Dillmon except defamation and requested that all claims except defamation be dismissed with prejudice. In ultimately denying this motion, the trial court treated it as a Rule 12.02(6) motion to dismiss.

Mr. Dillmon then filed on February 7, 2019, a "Motion for the Dismissal for Failure to State a Claim on which Relief can be Granted," requesting, *inter alia*, the "recusal" of Mr. Mansfield as Ski Chalet's counsel. The trial court treated the portion of the motion concerning Mr. Mansfield as one for disqualification. Ski Chalet filed a motion to quash and for protective order on February 12, 2019, stating that it had received two "Subpoenas *Duces Tecum*," which purported to compel Mr. Mansfield and Troy and Teresa Dailey, who apparently were involved with Mr. Dillmon in an unrelated matter, to the courthouse for depositions. Ski Chalet argued, *inter alia*, that the

subpoenas were not in compliance with the Tennessee Rules of Civil Procedure, that Mr. Dillmon was in violation of Tennessee Rule of Civil Procedure 26.07 (concerning the signing of discovery documents), that Mr. Mansfield was not a witness in this case, and that the Daileys had nothing to do with the case and no relevant testimony to offer.

Mr. Dillmon sent a letter via email to the trial court judge in response to Ski Chalet's motion to quash and for a protective order, primarily stating various allegations concerning Mr. Mansfield's conduct. On February 18 and 19, 2019, Mr. Dillmon sent email messages to the trial court judge's assistant, stating that Mr. Dillmon had been admitted to a hospital and subsequently transferred to an intensive care unit. Mr. Dillmon requested a continuance of the proceedings in his email messages.

Following a hearing conducted on February 20, 2019, at which Mr. Dillmon did not appear, the trial court entered an order on February 25, 2019, quashing the requested deposition subpoenas as to Mr. Mansfield and the Daileys "until and unless Mr. Dillmon requests to argue his position at a subsequent hearing . . . ." The trial court set a hearing on the motion to disqualify Mr. Mansfield for February 26, 2019. The court also specifically directed the following concerning Mr. Dillmon's future court filings:

> All pleadings and any other documents filed by Mr. Dillmon shall be filed in the Circuit Court Clerk's Office, who is directed to forward a copy to the Court. Moreover, in the future if Mr. Dillmon does not intend to appear for a hearing for health reasons, then prior to the hearing, he is to file documentation from his physician stating Mr. Dillmon's present condition, and whether he is unable, because of such condition to physically attend such hearing; otherwise, Mr. Dillmon's absence will be treated as unexcused.

Ski Chalet filed a reply objecting to Mr. Dillmon's various pending motions on February 25, 2019. Mr. Dillmon then sent via email a "Motion to Stay Proceedings," presented in letter format to Judge Davies, on February 28, 2019, again requesting a continuance because of Mr. Dillmon's medical complications, which as stated in this letter/motion included "kidney failure" and a "heart blockage."

Following the pretrial conference held on February 26, 2019, the trial court entered an order on March 1, 2019, finding, *inter alia*, that Mr. Dillmon had failed to appear at the pretrial conference and had failed to file a pleading indicating the reason for his failure to appear. In this order, the trial court denied Mr. Dillmon's motion to disqualify Mr. Mansfield, denied Mr. Dillmon's motion to dismiss, quashed Mr. Dillmon's deposition subpoena as to Mr. Mansfield, reserved any ruling on a motion *in limine* filed by Ski Chalet, and stated that it would provide a revised version of proposed

6

jury instructions to both parties prior to trial, which the court stated was set for March 13, 2019. The trial court also entered an order on March 7, 2019, denying Mr. Dillmon's motion to stay upon finding that Mr. Dillmon had failed to file "a supporting affidavit or any medical records from his treating physician or other health providers as required by prior order of this Court." Additionally, the trial court entered an order on March 7, 2019, confirming the court's denial of Mr. Dillmon's Rule 60.02 motions concerning the December 2018 order denying his motion to stay the proceedings.[4]

Ultimately, the trial court conducted the jury trial on March 13, 2019, awarding, in accordance with the jury's verdict, the monetary judgments to Ski Chalet against Mr. Dillmon and the other remaining defendants in an order entered on March 18, 2019.[5] On March 25, 2019, Mr. Dillmon sent an email to the trial court judge, attaching a "Motion for the Recusal of Judge Robert E. Lee Davies," in which Mr. Dillmon asserted that on two occasions Judge Davies had been informed of Mr. Dillmon's medical conditions and that the court had conducted a hearing on Mr. Dillmon's motions when the court was aware that Mr. Dillmon was in need of medical care at a hospital. On March 28, 2019, the trial court entered an order finding that Mr. Dillmon had not properly filed a motion to recuse and that no such motion was before the court for consideration.

On April 8, 2019, Mr. Dillmon filed a "Motion for Order for Court Reporter to Release Trial Transcript Taken March 13, 2019." On April 15, 2019, Mr. Dillmon filed a pleading entitled, "Defendant Dillmon's Motion to Alter or Amend Under T.R.C.P 59, Rule 59.01, Rule 59(e), Rule 59.07 and Rule 50.07 FRCP. Fed. R.Civ.P. 15(a), and Any Other Rule Not Specifically Named," requesting a new trial because his medical conditions had allegedly prevented him from appearing at trial. This motion included an affidavit executed by Dr. Macklin, stating, *inter alia*, that he had treated Mr. Dillmon on

---

[4] In its order denying Mr. Dillmon's motion for new trial, the trial court stated that Mr. Dillmon filed "another motion pursuant to Rule 60.02 Tenn. R. Civ. P. on February 28, 2019 which the Court denied by order entered March 7, 2019." We note that the record before us includes Mr. Dillmon's pleading filed on February 28, 2019, entitled, "Motion to Stay Proceedings," in which he mentions his pending "criminal appearance" that formed the basis of his argument in his two earlier Rule 60.02 motions. The record does not, however, include a third motion expressly relying on Rule 60.02.

[5] Mr. Dillmon has not refuted Ski Chalet's averment in its complaint that Mr. Dillmon "engages in business, from time to time, under the name of Restoration Services Unlimited." We note that although the jury's verdict form includes Restoration Services Unlimited as a defendant along with Mr. Dillmon, the trial court did not include Restoration Services Unlimited in its judgment, awarding the $166,401.26 in compensatory damages and $190,000.00 in punitive damages against "Richard Pate, Clint Bowman, individually and as partners of P&B Construction & Remodeling, and J. Ron Dillmon, jointly and severally." Inasmuch as Mr. Dillmon has not raised any issue related to whether Restoration Services Unlimited could be considered an entity separate from himself, we find the omission of Restoration Services Unlimited from the judgment to be immaterial to the validity of the judgment against Mr. Dillmon.

a regular basis; that he had seen Mr. Dillmon on March 15, 2019; and that due to medications and other factors, Mr. Dillmon's cognitive state was impaired and "this would have significantly impaired his ability to deal with complex legal proceedings."

Mr. Dillmon then filed a pleading entitled, "Defendant's Motion Regarding Defendants Rule 59 Motion for a New Trial and Since the Motion Was Timely Filed Hereby Amends Defendants Motion for New Trial," on April 26, 2019, in which he argued that the trial court had been biased against him throughout the case while he also requested that the trial court grant him a new trial. Although in this motion Mr. Dillmon stated that he "will ask for your [Judge Davies's] recusal in a formal Motion, something [he] should have done a long time ago," Mr. Dillmon did not actually request Judge Davies's recusal in the motion. He concomitantly filed a motion requesting that the trial court set a hearing on his Rule 59 motion for July 2019. Ski Chalet filed a response objecting to Mr. Dillmon's Rule 59 motion.

Following a hearing conducted on April 30, 2019, at which both Mr. Dillmon and Ski Chalet's counsel appeared, the trial court entered a "Final Order" on May 3, 2019, denying Mr. Dillmon's motion for a new trial upon finding, *inter alia*, that Mr. Dillmon had "not met his burden of providing a valid excuse for his failure to appear for the trial." In a separate order also entered on May 3, 2019, the trial court denied Mr. Dillmon's motion for an order directing the court reporter to release the transcript to him, finding that the court did not have authority to enter such an order because the matter was contractual between Ski Chalet and the court reporter.

Mr. Dillmon timely filed a notice of appeal with this Court. Subsequently, on July 5, 2019, Mr. Dillmon filed with the trial court a "Notice of Late Filed Exhibit," concerning his email and voicemail communication with the trial court during the proceedings, attaching a purported recording of a conversation between Mr. Dillmon and Ms. Williams. On July 16, 2019, Mr. Dillmon filed with the trial court a "Motion to Recuse Judge Robert E. Lee Davies" with an attached "memorandum of law" that included some 120 pages of primarily medical records related to Mr. Dillmon, as well as a transcript of the April 30, 2019 hearing. Mr. Dillmon subsequently filed with the trial court a "Motion for Contempt for failure to Honor a Lawful Subpoena," alleging contempt against attorney Mansfield for failing to respond to a subpoena to produce the trial transcript and testify concerning the transcript. In an order entered on July 29, 2019, the trial court dismissed the post-trial motions for recusal and contempt upon determining that because the motions had been filed after Mr. Dillmon had filed his notice of appeal, the trial court did not have subject matter jurisdiction to consider the motions.

## II. Issues Presented

Mr. Dillmon has raised twelve issues on appeal, some of which are repetitive. In addition to consolidating the repetitive issues, we have restated and reordered Mr. Dillmon's issues to categorize sub-issues within three overarching issues as follows:

1.  Whether the trial court abused its discretion by denying Mr. Dillmon's Tennessee Rule of Civil Procedure 59 motion for a new trial.

2.  Whether the trial court abused its discretion by denying Mr. Dillmon's pretrial motions.

    A.  Whether the trial court abused its discretion in denying Mr. Dillmon's "motion to set aside" its November 9, 2018 order denying Mr. Dillmon's motion to stay.

    B.  Whether the trial court abused its discretion in denying Mr. Dillmon's December 14, 2018 motion for continuance.

    C.  Whether the trial court abused its discretion in denying Mr. Dillmon's two Tennessee Rule of Civil Procedure 60.02 motions to vacate the court's December 20, 2018 order denying Mr. Dillmon's motion to stay due to his criminal indictments.

    D.  Whether the trial court abused its discretion in quashing the subpoenas requested by Mr. Dillmon.

    E.  Whether the trial court erred in dismissing Mr. Dillmon's "Motion for Partial Summary Judgment," treated as a motion to dismiss, in its March 1, 2019 order.

3.  Whether the trial court abused its discretion by denying Mr. Dillmon's post-trial motions.

    A.  Whether the trial court erred in denying Mr. Dillmon's motion for production of the trial transcript.

9

B.  Whether the trial court erred in denying Mr. Dillmon's motion for recusal of the trial court judge.[6]

Ski Chalet has raised two additional issues on appeal, which we have restated as follows:

4.  Whether Mr. Dillmon has waived this appeal by failing to comply with Tennessee Rule of Appellate Procedure 27.

5.  Whether this appeal is frivolous pursuant to Tennessee Code Annotated § 27-1-122 and applicable case law.

## III.  Standard of Review

Although the underlying action in this case involved a jury trial, *see Creech v. Addington*, 281 S.W.3d 363, 372 (Tenn. 2009) ("An appellate court shall only set aside findings of fact by a jury in a civil matter if there is no material evidence to support the jury's verdict." (citing Tenn. R. App. P. 13(d))), the issues in the instant appeal primarily concern Mr. Dillmon's motion for new trial and pretrial and post-trial motions.  We review a trial court's denial of a Tennessee Rule of Civil Procedure 59.07 motion for new trial under an abuse of discretion standard. *Melton v. BNSF Ry. Co.*, 322 S.W.3d 174, 181 (Tenn. Ct. App. 2010).  Our Supreme Court has elucidated the following analysis regarding abuse of discretion:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000).  A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999).  The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

---

[6] Mr. Dillmon includes the trial court judge's alleged bias against him in two of his stated issues, once as a reason why his motion for new trial should have been granted and once as a reason why his two Rule 60.02 motions should have been granted concerning the December 20, 2018 order.  Although Mr. Dillmon does not actually reference his post-trial motion for the trial court judge's recusal in his statement of the issues, we will treat the recusal motion's denial for lack of subject matter jurisdiction as raised on appeal for purposes of clarity and to prevent prejudice to the judicial process. *See* Tenn. R. App. P. 13(b).

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Similarly, we apply an abuse of discretion standard to our review of pretrial motions for continuance, *see Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997), and to motions filed pursuant to Tennessee Rule of Civil Procedure 60.02, *see Branch Banking & Trust Co. v. Hill*, 582 S.W.3d 221, 230-31 (Tenn. Ct. App. 2019). We review questions of law *de novo* with no presumption of correctness. *Creech*, 281 S.W.3d at 372.

Concerning motions seeking dismissal of a complaint pursuant to Tennessee Rule of Civil Procedure 12.02(6), our Supreme Court has explained:

> A Rule 12.02(6) motion to dismiss only seeks to determine whether the pleadings state a claim upon which relief can be granted. Such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof, and, therefore, matters outside the pleadings should not be considered in deciding whether to grant the motion. In reviewing a motion to dismiss, the appellate court must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. It is well-settled that a complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. Great specificity in the pleadings is ordinarily not required to survive a motion to dismiss; it is enough that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *White v. Revco Disc. Drug Ctrs., Inc.,* 33 S.W.3d 713, 718 (Tenn. 2000) (citing Tenn. R. Civ. P. 8.01).

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002).

In reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We respect Mr. Dillmon's decision to proceed without benefit of counsel and note that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Although parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

11

IV.  Compliance with Tennessee Rule of Appellate Procedure 27

As a threshold issue, Ski Chalet contends that Mr. Dillmon has waived his various issues on appeal by failing to substantially comply with Tennessee Rule of Appellate Procedure 27, which provides in pertinent part:

(a)     Brief of the Appellant.  The brief of the appellant shall contain under appropriate headings and in the order here indicated:

   (1)     A table of contents, with references to the pages in the brief;

   (2)     A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

   * * *

   (4)     A statement of the issues presented for review;

   (5)     A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

   (6)     A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

   (7)     An argument, which may be preceded by a summary of argument, setting forth:

      (A)     the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

      (B)     for each issue, a concise statement of the applicable standard of review (which may appear in the

12

discussion of the issue or under a separate heading placed before the discussion of the issues);

(8)  A short conclusion, stating the precise relief sought.

While noting that "[f]or good cause, we may suspend the requirements or provisions of these rules in a given case," this Court has also explained that "[c]ourts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." *Bean v. Bean*, 40 S.W.3d 52, 54-55 (Tenn. Ct. App. 2000). Tennessee Court of Appeals Rule 6(b) similarly provides in pertinent part:

No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Ski Chalet acknowledges that Mr. Dillmon has "arguably complied *in form*" with Tennessee Rule of Appellate Procedure 27 but asserts that Mr. Dillmon has "failed to comply with the essential requirements" of subsections (6) and (7). Ski Chalet specifically argues that Mr. Dillmon has not properly cited to the record and that he has included argumentative statements in his factual section and purported facts not in the record throughout his principal brief. As Ski Chalet notes, Mr. Dillmon attached to his principal brief a 284-page appendix. It appears that Mr. Dillmon has then attempted to cite to the record by citing to his appendix documents, which he has termed, "exhibits." We note, however, that in his argument section, Mr. Dillmon has, for the most part, cited to authority that is either controlling or persuasive for this Court and that he has set forth what is essentially a proper standard of review.

Although much of what is in Mr. Dillmon's appendix, such as pleadings and orders, is in the record, several of the documents are not, including medical records and what appears to be a transcript excerpt from the April 2018 hearing during which Judge Ogle announced his recusal from the case. We emphasize that with exceptions not applicable here, only "those facts established by the evidence in the trial court and set forth in the record" may be considered by this Court on appeal. *See* Tenn. R. App P. 13(c). Documents included solely in an appendix to a party's brief have not been properly supplemented to the record and will not be considered by this Court on appeal. *See* Tenn. R. App. P. 24(a), (e); *Jennings v. Sewell-Allen Piggly Wiggly*, 173 S.W.3d 710, 712 (Tenn. 2005) ("This attachment [to an appellate brief] . . . does not serve to

13

supplement the record on appeal."). We will therefore not review documents presented in Mr. Dillmon's appendix that have not been included in the record by the trial court. *See generally, Hessmer*, 138 S.W.3d at 903 ("[T]he courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.").

However, upon careful consideration and in light of Mr. Dillmon's *pro se* status, we determine, in our discretion, that Mr. Dillmon has not failed to comply with Tennessee Rule of Appellate Procedure 27 so substantially as to waive what we determine to be his dispositive issues: whether the trial court abused its discretion by denying Mr. Dillmon's (1) amended motion for new trial, (2) certain pretrial motions, and (3) certain post-trial motions. We will analyze each of these issues in turn.

V. Denial of Motion for New Trial

Mr. Dillmon contends that the trial court abused its discretion by denying his Tennessee Rule of Civil Procedure 59.07 motion for new trial. He asserts that "the evidence establishes" that his failure to appear for trial on March 13, 2019, was "both excusable and involuntary." Mr. Dillmon also maintains that he sufficiently notified the trial court concerning his medical condition and purported inability to appear at trial and that he should be granted a new trial based on the trial court's alleged "prejudicial misconduct and comments." Ski Chalet contends that the trial court did not abuse its discretion in denying Mr. Dillmon's motion for new trial because Mr. Dillmon did not file the documentation of his inability to appear that was required by the trial court and evinced his own competence to appear through his filing of multiple motions and responses. Upon careful review, we determine that the trial court did not abuse its discretion in denying Mr. Dillmon's motion for a new trial.

Mr. Dillmon timely filed his initial motion for new trial within thirty days following entry of the trial court's judgment. *See* Tenn. R. Civ. P. 59.02. He then filed his amended motion for new trial prior to the hearing on the motion. Tennessee Rule of Civil Procedure 59.07 provides:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury for any of the reasons for which new trials have heretofore been granted.

*See Tenn. Bank & Trust v. Paragon Paint & Equip.*, No. W1998-00556-COA-R3-CV, 1999 WL 1336058, at *2 (Tenn. Ct. App. Dec. 15, 1999) ("A Rule 59 motion to grant a new trial is used to afford relief from a judgment because of mistake, inadvertence, surprise, or excusable neglect." (citing *Campbell v. Archer,* 555 S.W.2d 110, 112 (Tenn.

14

1979)).  "A trial court is given wide latitude in granting a motion for a new trial, and a reviewing court will not overturn such a decision unless there has been an abuse of discretion."  *Loeffler v. Kjellgren*, 884 S.W.2d 463, 468 (Tenn. Ct. App. 1994).  Furthermore, "the burden is on the movant to show the abuse of discretion."  *Esstman v. Boyd*, 605 S.W.2d 237, 240 (Tenn. Ct. App. 1979).

In its order denying Mr. Dillmon's motion for new trial, the trial court specifically found:

> Mr. Dillmon's motion is based entirely on proving that he had a valid excuse for failing to appear at the trial of this case on March 13, 2019. In support of his motion, Mr. Dillmon filed the affidavit of Daniel Macklin, M.D.  Dr. Macklin is a consultant with the Mayo Clinic in Jacksonville, Florida.  Dr. Macklin confirmed that Mr. Dillmon was hospitalized in Knox County, Tennessee, February 18-21, 2019 with rhabdomyolysis, which is a syndrome caused by muscle injury.  Although Dr. Macklin spoke with Mr. Dillmon by phone in March 2019, he did not see Mr. Dillmon until March 15, 2019.  Dr. Macklin states that "compared to his normal neurologic cognitive status, he was confused, and memory of recent events was impaired."  Dr. Macklin concludes that in his opinion, "Mr. Dillmon's cognitive impairment in February and March would have significantly impaired his ability to deal with complex legal proceedings."

> Mr. Dillmon did not file any other affidavit in support of his motion for new trial.  At the hearing on his motion for a new trial, the Court pointed out to Mr. Dillmon that he did not file his own affidavit explaining where he was on March 13 and why he failed to appear in court, or file any pleading prior to the trial that he was unable to appear for court on March 13, 2019.  The Court offered Mr. Dillmon the opportunity to take the witness stand and testify under oath to provide any proof to support his motion; however, when Mr. Dillmon was informed that he would be subject to cross-examination, Mr. Dillmon elected not to testify stating "my mind is not clear enough to be subject to cross-examination[."]

> A history of Mr. Dillmon's actions in this case is necessary to explain the Court's ruling on this issue.  On October 22, 2018, the Court entered an amended scheduling order setting various motions for a hearing on November 6, 2018.  However, after the entry of the amended scheduling order, Mr. Dillmon filed a motion to stay the proceedings on the grounds that he had been indicted for arson and filing a fraudulent insurance claim. When the Court denied Mr. Dillmon's motion to stay on November 6,

15

2018, Mr. Dillmon then claimed he did not want to set the case for trial until the fall of 2019 so that he could have time to hire another lawyer to represent him. When the Court denied that request, Mr. Dillmon then suggested that he intended to take sixteen depositions. The Court gave Mr. Dillmon a deadline for taking depositions of February 15, 2019 and set the trial date of March 13, 2019. Mr. Dillmon made no effort to take any depositions during November, December, or January. Instead, he waited until February 8, 2019 to issue subpoenas to three witnesses, who had nothing to do with the construction and invoices for [Ski Chalet's] pool.

On December 7, 2018, Mr. Dillmon filed another motion to vacate the Court's prior order of November [9], 2018 and stay the proceedings yet again. The Court entered an order on December 13, 2018 setting Mr. Dillmon's motion for a hearing on December 20, 2018. Mr. Dillmon failed to appear at the hearing on December 20, 2018. The Court found Mr. Dillmon presented the same arguments as before and that there was no reason to stay the proceedings.

On January 18, 2019, Mr. Dillmon filed a motion pursuant to Rule 60.02 Tenn. R. Civ. P. and a second motion to stay the proceedings. The motion was denied by order entered January 25, 2019.

On February 1, 2019, Mr. Dillmon filed a second motion pursuant to Rule 60.02 Tenn. R. Civ. P. By order entered February 6, 2019, the motion was denied, and the order provided "the case will proceed to trial as previously scheduled."

On February 7, Mr. Dillmon filed a motion to dismiss which the Court agreed to hear at the pretrial conference on February 26, 2019.

On February 8, 2019, Mr. Dillmon issued subpoenas for the depositions of Attorney Mansfield and two other witnesses. In addition, Mr. Dillmon filed a motion to disqualify Mr. Mansfield from representing [Ski Chalet] in the case. Because of the time constraints, the Court entered an order on February 14, 2019 setting these issues for argument on February 20, 2019 in the Cocke County Courthouse. Mr. Dillmon failed to appear at the hearing scheduled for February 20, 2019. The Court entered an order on February 25, 2019 quashing the depositions issued by Mr. Dillmon and resetting the motion to disqualify Mr. Mansfield to February 26, 2019, the previously scheduled pretrial conference. The order specifically required Mr. Dillmon to file documentation from his treating

16

health provider setting forth the reasons for his admission to any healthcare facility, length of stay, summary of treatment, and diagnosis upon release from said facility. Mr. Dillmon failed to comply with this order.

The order of February 25, 2019 also provided as follows:

Moreover, in the future if Mr. Dillmon does not intend to appear for a hearing for health reasons, then prior to the hearing, he is to file documentation from his physician stating Mr. Dillmon's present condition, and whether he is unable, because of such condition to physically attend such a hearing; otherwise, Mr. Dillmon's absence will be treated as unexcused.

On February 26, 2019, the Court conducted the pretrial conference hearing as previously scheduled in the Court's order of November 9, 2018. Mr. Dillmon failed to appear, and he failed to file any pleading with the Court indicating he was unable to attend the hearing. The order disposing of the pretrial issues was entered on [March 1], 2019.[7] Although Mr. Dillmon failed to comply with this Court's orders regarding his unexcused failures to appear, he did file another motion pursuant to Rule 60.02 Tenn. R. Civ. P. on February 28, 2019 which the Court denied by order entered March 7, 2019. In addition, Mr. Dillmon filed yet another motion requesting a stay without a supporting affidavit or any medical records from his health providers as required by prior order of this Court on February 28, 2019. The Court denied this motion by order entered March 7, 2019.

On the day of the trial, March 13, 2019, Mr. Dillmon failed to appear. Mr. Dillmon did not file any pleading indicating he was unable to appear on the date of trial. Instead, a co-defendant, Clint Bowman appeared at the trial. Mr. Bowman had not participated in any way since his attorney withdrew from representing him and Mr. Dillmon on June 2, 2017. During a recess, outside of the presence of the jury, the Court questioned Mr. Bowman regarding the whereabouts of Mr. Dillmon. Mr. Bowman responded that he was at Mr. Dillmon's home on March 12, 2019 (the day before the trial) doing some work for Mr. Dillmon. When asked by the Court what Mr. Dillmon was doing on the day of trial, Mr. Bowman told the Court that Mr. Dillmon was at home packing and preparing to drive

_____

[7] The trial court appears to have inadvertently stated the date of the March 1, 2019 order's entry as February 28, 2019.

17

to the Mayo Clinic in Florida the next day (March 14, 2019). At the conclusion of the trial, the Court requested a deputy clerk to testify whether Mr. Dillmon had filed any pleadings during the day. She confirmed that he did not.

Having heard the testimony from the trial and considering Mr. Dillmon's conduct throughout these proceedings, the Court concludes Mr. Dillmon has used his physical infirmities to his advantage whenever he did not wish to appear in court, but those same infirmities never prevented Mr. Dillmon from filing motions to stay, motions to dismiss, motions to recuse [Ski Chalet's] attorney, issuing subpoenas to take depositions, and a plethora of correspondence. Complying with the Court's order requiring documentation from his [physician] in the event Mr. Dillmon was unable to appear is not "a complex legal proceeding." The Court finds Mr. Dillmon has not met his burden of providing a valid excuse for his failure to appear for the trial, his failure to file any pleading indicating he was unable to appear in court, with supporting documentation from his health provider and most importantly, and when given the opportunity to explain his failure to appear under oath, Mr. Dillmon refused because of his fear of cross-examination.

The Court concludes Mr. Dillmon's objective throughout this case has been to obstruct and harass [Ski Chalet] in its pursuit of a judgment. None of Mr. Dillmon's excuses are credible. "The chickens have come home to roost[,"] and this Court will not indulge Mr. Dillmon any further in his attempts to delay the finality of the judgment against him, which he so justly deserves.

(Internal citation to record omitted.)

The trial court thereby found that Mr. Dillmon had failed to meet his burden of demonstrating that he was entitled to a new trial based on proof that his failure to appear at trial was excusable and involuntary. The court specifically found that in addition to Mr. Dillmon's conduct, which appeared designed to repeatedly attempt to delay the proceedings, Mr. Dillmon had not entered a properly filed pleading with the trial court concerning his absence on March 13, 2019, prior to trial; had not provided any supporting documentation other than the affidavit from Dr. Macklin that he had previously filed; and had refused to testify during the hearing on his motion for new trial as a means of providing evidence to explain his absence during trial. We determine that the record supports the trial court's findings in this regard.

18

In support of his assertion that he proved that his failure to appear at trial was excusable and involuntary, Mr. Dillmon primarily relies on Dr. Macklin's affidavit and Mr. Dillmon's February 19, 2019 email messages purportedly sent "to the Clerk of the Courts and the Judges Office from an E.R. and I.C.U. bed." Dr. Macklin's affidavit, attached to Mr. Dillmon's motion for new trial, had been executed on April 12, 2019. Dr. Macklin explained that he had been Mr. Dillmon's "supervising Mayo Clinic physician since 2003 and [had] full knowledge of his medical conditions and treat[ed] him on a regular basis." Dr. Macklin confirmed that he had reviewed records of Mr. Dillmon's hospitalization in Tennessee from February 18 through 21, 2019. As the trial court noted, although Dr. Macklin had spoken with Mr. Dillmon via telephone in February and early March 2019, he had not seen Mr. Dillmon in person until March 15, 2019.

Dr. Macklin stated in his affidavit that "concerned by [Mr. Dillmon's] new mental confusion and impaired memory," he had reviewed Mr. Dillmon's medications and concluded that an "extremely high dose" of a particular medication, apparently prescribed as a result of the February hospitalization, was "responsible for [Mr. Dillmon's] confusion and memory impairment." Dr. Macklin opined that Mr. Dillmon's "cognitive impairment in February, March and early April this year would have significantly impaired his ability to deal with complex legal proceedings."

Dr. Macklin's affidavit certainly supports Mr. Dillmon's overall assertion that his medical condition was a real concern and could have affected his ability to represent himself effectively during trial. However, as the trial court found, "[c]omplying with the Court's order requiring documentation from his [physician] in the event Mr. Dillmon was unable to appear [was] not 'a complex legal proceeding.'" Dr. Macklin's affidavit did not address Mr. Dillmon's whereabouts on the day of trial, March 13, 2019, or Mr. Dillmon's failure to present documentation concerning his whereabouts.

The record supports the trial court's finding that Mr. Dillmon's medical condition did not prevent him from "filing motions to stay, motions to dismiss, motions to recuse [Ski Chalet's] attorney, issuing subpoenas to take depositions, and a plethora of correspondence." Mr. Dillmon does not dispute that he had notice of the date of trial, yet he filed no documentation in compliance with the trial court's February 25, 2019 order that "if Mr. Dillmon does not intend to appear for a hearing for health reasons, then prior to the hearing, he is to file documentation from his physician stating Mr. Dillmon's present condition, and whether he is unable, because of such condition to physically attend such hearing[.]"

As to Mr. Dillmon's February 18-19, 2019 email messages, these were sent to an employee in the trial court clerk's office and/or to the trial court judge's assistant and were addressed *ex parte* to the trial court judge with a salutation in the first message of

"Dear Judge." Mr. Dillmon also copied the last message sent on February 19, 2019, to Mr. Bowman, his co-defendant. In the messages, Mr. Dillmon essentially stated that he was being treated, first in a hospital emergency room in Jefferson City, Tennessee, and then as an inpatient in the intensive care unit of a hospital in Knoxville, Tennessee. In requesting that the trial court clerk add his messages to the court file, Mr. Dillmon used the subject heading, "Court this week," apparently referring to the hearing scheduled for February 20, 2019, regarding Ski Chalet's motion to quash the subpoenas that Mr. Dillmon had issued to Ski Chalet's counsel and the Daileys and Mr. Dillmon's motion to disqualify Ski Chalet's counsel. In the initial message, Mr. Dillmon requested that the trial court "do the proper thing and put all this off until I recover." Other than Dr. Macklin's affidavit, eventually filed on April 15, 2019, Mr. Dillmon did not cause any documentation of his February hospitalization to be filed with the trial court.

Moreover, Dr. Macklin's affidavit indicates that Mr. Dillmon was discharged from the hospitalization referred to in the email correspondence on February 21, 2019, approximately three weeks prior to the date of trial and approximately five days prior to the pretrial conference. When Mr. Dillmon failed to appear at the February 20, 2019 hearing, the trial court, in its order entered on February 25, 2019, quashed Mr. Dillmon's requested deposition subpoenas as to Mr. Mansfield and the Daileys "until and unless Mr. Dillmon requests to argue his position at a subsequent hearing," at that time allowing Mr. Dillmon to follow up on his request if he had appeared at a subsequent hearing prior to trial. The trial court also set a hearing on Mr. Dillmon's motion to disqualify Ski Chalet's counsel for the date of the pretrial conference, February 26, 2019. Mr. Dillmon did not file any pleading or documentation of his purported inability to appear prior to the pretrial conference.

The trial court in the February 25, 2019 order also specifically directed Mr. Dillmon to file "[a]ll pleadings and any other documents" in the clerk's office and to "file documentation from his physician stating Mr. Dillmon's present condition, and whether he is unable, because of such condition to physically attend such hearing" if Mr. Dillmon intended not to appear for a future hearing. The court warned in this order that "Mr. Dillmon's absence [would] be treated as unexcused" if he did not comply with this directive. Although Mr. Dillmon was not present for the February 20, 2019 hearing, the February 25, 2019 order includes a properly executed certificate of service to him, and Mr. Dillmon has not disputed that he received a copy of the order.

On February 28, 2019, two days after he failed to appear at the pretrial conference, Mr. Dillmon sent an email message to the trial court judge's assistant, copied to an employee of the clerk's office, entitled, "Motion to Stay Proceedings," and addressed in letter format to the judge. Mr. Dillmon again noted his medical condition and requested a continuance. He concluded the "motion" as follows:

So will you grant a continuance of these proceedings and a stay until my health improves?

Anxious to hear your answer even-tho it is a forgone conclusion. The Irony of this is if you ring knocker was the one in such bad medical condition you would have put this off already the difference is I am a pro so litigant any you are not treating me as you would and swore to as an officer of the court with all the honor and privilege of a member of the Bar.

Do you remember making that oath???

As the trial court noted in its order denying Mr. Dillmon's motion for new trial, this motion to stay was filed "without a supporting affidavit or any medical records from [Mr. Dillmon's] health providers as required by prior order . . . ." The trial court entered an order denying this motion to stay on March 7, 2019.

The trial court stated in its order denying the motion for new trial that Mr. Bowman had testified that Mr. Dillmon had been home on the day before trial, and a deputy court clerk testified that Mr. Dillmon had filed no pleadings with the trial court clerk's office on the day of trial. However, on March 25, 2019, one week after the judgment resulting from the March 13, 2019 trial had been entered, Mr. Dillmon sent an email to the trial court judge's assistant, copying the trial court clerk, Ski Chalet's counsel, and Mr. Bowman. This email was presented in letter format to the trial court judge and had a document entitled, "Motion for the Recusal of Judge Robert E. Lee Davies," attached, which Mr. Dillmon claimed to have sent via email to the trial court clerk at 10:33 a.m. on March 13, 2019, approximately one and one-half hours after the trial had begun. In this "motion," Mr. Dillmon requested the recusal of the trial court judge. In finding that this "Motion to Recuse" was not properly filed and not properly before the trial court, the court stated in its March 28, 2019 order:

The Circuit Court Clerk has received a copy of an email by Defendant Dillmon which alleges that Defendant Dillmon "filed" a motion for recusal on March 13, 2019. Defendant Dillmon claims this motion was filed with the Clerk because he allegedly sent an email to Deputy Clerk Hill at 10:33 a.m. after the trial of this case had already commenced at 9:00 a.m. He also claims he emailed another copy of his motion to Circuit Court Clerk Ellison at 5:40 p.m. on March 13, 2019.

The Court has confirmed with the Circuit Court Clerk that no such emails were received. More importantly, the Tennessee Rules of Civil

21

Procedure do not allow parties to email pleadings for filing with the Courts; nor is a copy of a pleading emailed to opposing counsel, opposing parties, or the legal assistant of the Court considered a filing. Rule 5.06 Tenn. R. Civ. P. provides that the filing of pleadings and other papers with the Court as required by these Rules shall be made by filing them with the Clerk of the Court. The only procedure recognized for filing papers other than by mail or hand delivery to the Clerk of the Court is facsimile filing pursuant to Rule 5(A) Tenn. R. Civ. P. Emailing pleadings is not allowed under the Rules. In fact, this case provides an excellent example of why the Rules do not permit emailing of pleadings.

Accordingly, the Court finds that Defendant Dillmon has not in fact filed a motion to recuse, and until Defendant Dillmon follows the Rules of Civil Procedure and properly files a pleading, there is nothing before the Court.

We note that Tennessee Rule of Civil Procedure 5B provides in pertinent part that "[a]ny court governed by these rules may, by local rule, allow papers to be filed, signed, or verified by electronic means that comply with technological standards promulgated by the Supreme Court." For example, the Davidson County Circuit, Probate and General Sessions-Civil E-Filing Rules provide a procedure for electronically filing documents with those courts using what is defined in section 2(b) of those e-filing rules as "the dedicated E-Filing system maintained by the Clerk of the Court for the purposes of filing." The local rules applicable to the trial court in the instant action, the Circuit Court Fourth Judicial District Local Rules of Practice – Civil – most recently amended on February 27, 2019, do not include a provision for electronic filing other than the facsimile filing allowed by Tennessee Rule of Civil Procedure 5(A). We therefore agree with the trial court that Mr. Dillmon's emailed "Motion for the Recusal" of the trial court judge was not properly filed with the trial court no matter which day it was initially received. We emphasize, however, that we find no reason to question the trial court's finding in its order denying the motion for new trial that the clerk's office had not received an email from Mr. Dillmon on the day of trial.

On appeal, Mr. Dillmon has not raised an issue concerning the denial of this improperly filed recusal motion. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."). However, he has argued that he should be granted a new trial because the trial court abused its discretion by demonstrating bias or the appearance of bias against him throughout the proceedings. We disagree with Mr. Dillmon on this point.

The trial court explained in its order denying the motion for new trial that "[a] history of Mr. Dillmon's actions in this case is necessary to explain the Court's ruling on this issue." Upon our thorough review of the record, we discern no indication of bias or prejudice expressed or implied by the trial court judge save an apparent wariness based on Mr. Dillmon's conduct during the proceedings themselves. *See Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994) ("To disqualify, prejudice must be of a personal character, directed at the litigant, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" (quoting *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo. Ct. App. 1990)); *see, e.g., Watson v. City of Jackson,* 448 S.W.3d 919, 933 (Tenn. Ct. App. 2014) ("Although we are cognizant of the fact that the trial judge declined to grant any of [the appellant's] *pro se* post-trial motions, it is well-settled that '[a]dverse rulings by a trial judge . . . are not usually sufficient to establish bias.'" (quoting *Ingram v. Sohr,* No. M2012-00782-COA-R3-CV, 2013 WL 3968155 at *31 (Tenn. Ct. App. July 31, 2013))).

In sum, Mr. Dillmon filed no pleading or documentation from a medical professional or facility to explain his failure to appear in court on the day of trial. Moreover, he did not present an affidavit with his own sworn statement concerning the reason for his absence. During the April 2019 hearing on the motion for new trial, Mr. Dillmon presented statements as a *pro se* litigant, but he declined the trial court's invitation to testify under oath. *See US Bank Nat'l Ass'n v. Brooks*, No. M2016-00689-COA-R3-CV, 2016 WL 6581344, at *5 (Tenn. Ct. App. Nov. 4, 2016) ("This Court has repeatedly held . . . that statements made in open court are not evidence unless given by a witness who has taken an oath or affirmation before testifying."). His statements as an unsworn litigant can therefore not be considered evidence regarding the reason for his absence on the day of trial.

Noting the provision in Rule 59.07 that a new trial may be granted "for any of the reasons for which new trials have heretofore been granted," Mr. Dillmon relies on a contrast he draws between the instant action and a decision rendered by the Tennessee Court of Criminal Appeals, *State v. Tidmore*, 604 S.W.2d 879 (Tenn. Crim. App. 1980). In *Tidmore*, the appellate court upheld the trial court's denial of a motion for new trial based on the finding that the criminal defendant's absence at trial had been voluntary. *Id.* at 881. Mr. Dillmon contends that in contrast, his absence at trial was involuntary. However, he has failed to carry his burden of proof to demonstrate that his absence at trial was involuntary.

We determine that a comparison is instructive between the Tennessee Supreme Court's decision involving litigants' failure to appear in *Campbell v. Archer*, 555 S.W.2d 110 (Tenn. Ct. App. 1977) and this Court's decision also involving litigants' failure to

23

appear in *Sandalwood Props., LLC v. Roberts*, No. E2006-01163-COA-R3-CV, 2006 WL 3431939 (Tenn. Ct. App. Nov. 29, 2006), *perm. app. denied* (Tenn. Apr. 23, 2007). In *Campbell*, neither the defendants nor their newly retained attorney had been informed of the pending trial date by the defendants' former counsel, and upon learning that the case was being tried, the defendants' new counsel and one of his clients had immediately proceeded to the courtroom and requested permission to approach the bench, which had been denied by the trial court. *Campbell*, 555 S.W.2d at 112. Our Supreme Court reversed the trial court's denial (and this Court's affirmation of the denial) of the defendants' motion for new trial upon determining that "[t]he facts make out a case of mistake, inadvertence, or excusable neglect, rather than one of willful failure to appear." *Id.* at 113.

In contrast, this Court in *Sandalwood Props.* affirmed the trial court's denial of the *pro se* defendants' motion for new trial upon determining that the defendants' affidavits asserted only that their failure to appear for trial had been based on their unfamiliarity with the court system and their difficulty locating the circuit court in which the trial was held. *See Sandalwood Props.*, 2006 WL 3431939, at *4 ("Upon that basis and the fact that the appellants had previously failed to appear at their hearing in General Sessions Court . . . we cannot agree that the denial of the motion for a new trial was 'arbitrary, illogical or unconscionable' and therefore, we find no abuse of discretion." (quoting *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000)); *see also Allen v. Allen*, No. W2010-00920-COA-R3-CV, 2011 WL 198516, at *5 (Tenn. Ct. App. Jan. 12, 2011) (affirming the trial court's denial of the appellant's motion for new trial upon determining that the appellant had presented no evidence to support a valid excuse for her failure to appear and had refused to testify concerning why she did not appear).

In the case at bar, Mr. Dillmon has failed to present evidence demonstrating that his failure to appear for trial on March 13, 2019, was involuntary or excusable. The trial court did not abuse its discretion by denying Mr. Dillmon's motion for new trial.

VI. Pretrial Motions and Subpoenas

Mr. Dillmon also contends that the trial court abused its discretion by denying several of his pretrial motions and entering orders quashing his subpoenas. For purposes of our analysis, Mr. Dillmon's pretrial issues may be grouped into the following three subsets: (1) the trial court's denial of Mr. Dillmon's motions stemming from the November 9, 2018 order denying Mr. Dillmon's motion to stay due to his indictment on criminal charges; (2) the trial court's orders quashing Mr. Dillmon's subpoenas; and (3) the trial court's denial of Mr. Dillmon's "Motion for Partial Summary Judgment," treated as a motion to dismiss. We will address Mr. Dillmon's issue(s) concerning each of these subsets in turn.

24

### A.  Motions Stemming from November 2018 Denial of Motion to Stay

The trial court entered an order on November 9, 2018, denying Mr. Dillmon's October 2018 motion to stay the instant civil proceedings until criminal charges of arson and filing false or fraudulent insurance claims were resolved.  In denying the motion to stay, the trial court made the following findings of fact:

> There were no issues in the civil and criminal proceedings which would overlap.  The civil proceeding in this case involves a claim for breach of contract and fraud regarding repairs to a pool in Sevier County by Defendant Dillm[o]n and other Defendants.  The case has nothing to do with the charges against Mr. Dillm[o]n in Jefferson County for allegedly burning his own house to recover insurance proceeds.

> This case has been pending since 2016.  Defendant Dillm[o]n was just served with the indictment on October 5, 2018.

> [Ski Chalet] will be prejudiced by delaying the civil case even further.

> There is no hardship on [Mr. Dillmon] by allowing these two cases to go forward as they are completely different and involve completely different issues.  [Mr. Dillmon's] claim that he does not have adequate funds yet to hire an attorney in the civil case is not well taken.

> The issue of convenience between the civil and criminal courts is not applicable.

> Neither the interest of any potential third-party nor the public will be adversely affected by allowing both cases to proceed.

(Paragraph numbering omitted.)

Mr. Dillmon has raised issues concerning the trial court's denial of his subsequent "Motion to Set Aside" the November 9, 2018 order and the trial court's denial of his motion to continue the hearing on the motion to set aside.  He argues that the trial court abused its discretion by proceeding with a hearing on the motion to set aside without Mr. Dillmon present after he had filed a motion for continuance of the hearing.  He also argues that the trial court erred in its application of law because it did not properly

consider the factors set forth in *Bell*, 206 S.W.3d at 94, for determining whether to stay civil proceedings until a criminal case involving a party is resolved. Upon careful review, we disagree.

As the trial court noted in its December 13, 2018 order, Mr. Dillmon "fail[ed] to set forth any Rule of Civil Procedure as a basis for the motion" to set aside. In setting the motion for hearing, the trial court stated in the December 13 order that it would treat the motion as one filed pursuant to Tennessee Rule of Civil Procedure 54.02(1). In so doing, the trial court properly looked to the substance of Mr. Dillmon's motion rather than its technical form. *See Davis v. Wells Fargo Home Mortg.*, No. W2016-02278-COA-R3-CV, 2018 WL 1560077, at *2 (Tenn. Ct. App. Mar. 29, 2018) ("Under Tennessee law . . . courts consider the substance of a motion rather than its title." (citing *Tenn. Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998))).

Concerning Rule 54.02 motions such as the one at issue, our Supreme Court has explained in relevant part:

> Rule 54.02 . . . provides that in the absence of a *final* judgment:
>
> > any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is *subject to revision at any time* before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
>
> Tenn. R. Civ. P. 54.02.
>
> * * *
>
> Our research reveals no Tennessee case law regarding the standard a trial court should apply in ruling on a Rule 54.02 motion to revise. Cases analyzing Rule 59.04 motions to alter or amend, however, offer some guidance in determining the standard for revising non-final orders. *See Thomas v. Swindle,* 676 So.2d 333, 335 (Ala. Civ. App. 1996) (finding "caselaw concerning Rule 59 motions to be persuasive authority" in interpreting Rule 54 motions). While the rules are not synonymous, they are similar in intent and operation. They differ in that Rule 59.04 addresses final judgments and requires a motion to alter or amend to be made within 30 days of the entry of judgment. In contrast, Rule 54.02 addresses

26

interlocutory orders. Rule 54.02 confers upon the trial court "the privilege of reversing itself up to and including the date of entry of a final judgment." *Louis Dreyfus Corp. v. Austin Co.,* 868 S.W.2d 649, 653 (Tenn. Ct. App. 1993). Both rules, however, afford litigants a limited opportunity to readdress previously determined issues and afford trial courts an opportunity to revisit and reverse their own decisions.

*Harris v. Chern,* 33 S.W.3d 741, 743-44 (Tenn. 2000). "A trial court's ruling on a motion to revise pursuant to Rule 54.02 will be overturned only when the trial court has abused its discretion." *Id.* at 746.

In its December 20, 2018 order denying Mr. Dillmon's motion to set aside the November 9, 2018 order, the trial court found as follows in pertinent part:

On Monday, December 17, 2018, at 11:12 a.m. CST, Mr. Dillmon sent an email to this Court's judicial assistant requesting immediate action on his request [for continuance of the hearing]. At 2:03 p.m., CST, December 17, 2018, Mrs. Williams (judicial assistant), sent an email to Mr. Dillmon and Attorney Mansfield requesting a telephone conference with the Court in the next twenty minutes and if that was not possible, the Court would conduct a conference at 4:30 p.m. CST (5:30 p.m. EST). At 4:30 p.m. CST, the Court called in for the conference. Mr. Mansfield was on the line; however, Mr. Dillmon failed to participate. The Court waited for approximately thirty minutes while the Court's judicial assistant attempted to contact Mr. Dillmon by email, phone, and text; however, Mr. Dillmon failed to respond. The Court finds it extremely troubling that Mr. Dillmon would file pleadings alleging there was an emergency and request the Court for an immediate ruling but, was unavailable and not responsive, when the Court attempted to set up a conference on the very same day.

Instead, on the morning of December 18, 2018, Mr. Dillmon contacted the Court's judicial assistant and told her that he had not gone out of town for his appointment since he had not heard from the Court. Mrs. Williams then sent an email at 10:48 a.m. CST to Mr. Dillmon requesting him to contact her after he contacted the Mayo Clinic and inform her whether or not he was going to Florida that day. At 12:52 p.m. CST on December 18, 2018, Mr. Dillmon emailed Mrs. Williams and informed her the Mayo Clinic had not responded. Having heard nothing further from Mr. Dillmon, Mrs. Williams sent an email at 3:30 p.m. CST to Mr. Dillmon and Attorney Mansfield which stated:

> Based upon my communications with Mr. Dillm[o]n, Judge Davies has decided to proceed with the hearing as previously scheduled on Thursday at 1:30 p.m. EST. Judge Davies attempted to contact Mr. Dillm[o]n yesterday but for whatever reason Mr. Dillm[o]n did not call in for the phone conference which was set for 4:30 p.m. CST. As Mr. Dillm[o]n advised me today that he was still in town and had not received a response from the clinic, the hearing will proceed as scheduled.

Candace L. Williams, Judicial Assistant

> On December 19, 2018, after the office was closed, Mr. Dillmon sent an email to Mrs. Williams and Mr. Mansfield at 6:28 p.m. CST. This email contains misrepresentations regarding Mr. Dillmon's communications with Mrs. Williams and the attempts of the Court to contact Mr. Dillmon along with other impertinent and disrespectful comments.

> By the time Mrs. Williams read Mr. Dillmon's email on the morning of December 20, 2018, the Court was on its way to Sevierville for the hearing, and Mrs. Williams informed both parties by email at 8:17 a.m. CST that the hearing would proceed as previously scheduled.

> On December 20, 2018 at 1:30 p.m. EST, the Court conducted a hearing at the Sevier County Courthouse. Present were Mr. Mansfield and his client. Mr. Dillmon did not appear and after waiting twenty minutes, the Court informed those present it would issue an order based on the pleadings filed by Mr. Dillmon. The Court heard no argument from [Ski Chalet].

> In its prior order of November [9], 2018, the Court specifically considered the factors set forth in Bell v. Todd, [206] S.W.3d 86 (Tenn. Ct. App. 2005). After consideration of those factors, the Court found there was no reason to stay the proceedings in this case. Mr. Dillmon presents the same arguments as before as well as other irrelevant and impertinent arguments.

Contrary to Mr. Dillmon's contention, the trial court specifically indicated in its December 2018 order that it had not heard argument from Ski Chalet concerning Mr. Dillmon's motion to set aside. Instead, after detailing repeated attempts to include Mr.

28

Dillmon in a teleconference concerning his motion for a continuance of the hearing, the trial court elected in its discretion to decide the motion on the pleadings. The essence of Mr. Dillmon's argument in his original motion to stay the proceedings was that, pursuant to the factors set forth in *Bell*, the court should have found that he would face potential prejudice if the instant civil action were not stayed until the criminal indictments against him were resolved.

*Bell* involved a defendant in a civil wrongful death action who was incarcerated on a first-degree murder charge involving the same victim. *Bell*, 206 S.W.3d at 90. Following entry of a default judgment in the civil action, the trial court did not consider pending motions filed by the defendant prior to holding the damages portion of the trial. *Id.* at 91-92. On appeal, this Court vacated the judgment for damages and remanded for consideration of the pretrial motions. *Id.* at 92. Concerning the *Bell* defendant's motion to hold the civil action in abeyance, this Court set forth the factors that the trial court should consider on remand as follows:

> Courts customarily consider the following factors, among others, in deciding whether to stay a civil proceeding pending the resolution of a criminal case: (1) the extent to which the issues in the civil and criminal proceedings overlap, (2) the status of the criminal proceeding, (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay, (4) the hardship on the defendant, including the burden on the defendant if the cases go forward in tandem, (5) the convenience of both the criminal and the civil courts, and (6) the interests of third parties and the public.

*Id.* at 94 (internal citations omitted).

In his motion to set aside, Mr. Dillmon argued that the trial court had misapplied the *Bell* factors. The trial court, in reconsidering its November 2018 motion, reviewed its own application of the *Bell* factors as Mr. Dillmon had requested. Upon thorough review, we agree with the trial court that it properly considered the *Bell* factors in rendering its initial decision in the November 2018 order. We discern no abuse of discretion in the trial court's subsequent review of its findings in response to Mr. Dillmon's motion to set aside. Furthermore, given the circumstances of the December 20, 2018 hearing, we discern no abuse of discretion in the trial court's decision to deny Mr. Dillmon's motion for continuance of the hearing and proceed with its review of the November 2018 order without hearing further argument from the parties.

Mr. Dillmon also raises an issue concerning the trial court's denial of his two Tennessee Rule of Civil Procedure 60.02 motions to vacate the December 20, 2018 order

described above. In its January 25, 2019 order denying Mr. Dillmon's first Rule 60.02 motion, the trial court determined that Rule 60.02 was not applicable to the December 2018 order because that order was not a final judgment. The trial court subsequently denied a second Rule 60.02 motion filed by Mr. Dillmon concerning the December 2018 order on the same basis. Rule 60.02 provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a <u>final judgment, order or proceeding</u> for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

(Emphasis added.) "The general purpose of Rule 60.02 is 'to alleviate the effect of an oppressive or onerous final judgment.'" *Hussey v. Woods*, 538 S.W.3d 476, 482 (Tenn. 2017) (quoting *Black v. Black*, 166 S.W.3d 699, 703 (Tenn. 2005)).

We agree with the trial court's determination that Rule 60.02 was inapplicable to the December 2018 order denying Mr. Dillmon's motion to stay because the order was not a final judgment. We note also that the gravamen of Mr. Dillmon's argument in his Rule 60.02 motions was the same as in his earlier motion to set aside the December 2018 order. The trial court did not abuse its discretion in denying Mr. Dillmon's Rule 60.02 motions.

### B. Motion for Partial Summary Judgment or to Dismiss

Mr. Dillmon also raises what he lists as two issues, one asserting that the trial court erred in dismissing his motion for partial summary judgment and one asserting that the trial court erred in dismissing his motion for dismissal. On February 6, 2019, Mr. Dillmon filed what he entitled a "Motion for Partial Summary Judgment," first stating that the motion was filed pursuant to Tennessee Rule of Civil Procedure 12.02(6) as a motion for dismissal with prejudice and then stating that in the alternative, it was a motion for partial summary judgment filed pursuant to Tennessee Rule of Civil Procedure 56. The trial court, treating this motion as one for dismissal, set it for hearing during the pretrial conference held on February 26, 2019, and subsequently denied the motion in its order entered March 1, 2019. On appeal, Mr. Dillmon's argument

concerning this motion is based entirely on his contention that the trial court erred in making this ruling "on February 20, 2019, while [Mr. Dillmon] was hospitalized . . . ."

At the outset, we note that the trial court properly construed the substance of the motion to treat it solely as a motion to dismiss filed pursuant to Rule 12.02(6). *See Stewart*, 368 S.W.3d at 462 ("[C]ourts must give effect to the substance, rather than the form or terminology of a pleading."). The motion did not include "a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial" as required by Rule 56.03 for summary judgment motions. Furthermore, the argument section consisted mainly of a summary of Ski Chalet's complaint and Mr. Dillmon's assertion that Ski Chalet had undermined all but its defamation claim against him by allowing Mr. High to be dismissed from the action. Mr. Dillmon argued that the defamation claim was the only one against him upon which relief could be granted. *See* Tenn. R. Civ. P. 12.02(6) (providing for the defense to a claim consisting of "failure to state a claim upon which relief can be granted").

Contrary to Mr. Dillmon's assertion, the trial court did not rule on his motion to dismiss during the February 20, 2018 hearing. The trial court had set the motion to dismiss, along with the other remaining pretrial motions, for the pretrial conference on February 26, 2018, five days after Mr. Dillmon had undisputedly been released from the hospital. As the trial court noted in its order dismissing Mr. Dillmon's motion for new trial, "Mr. Dillmon failed to appear [for the pretrial conference], and he failed to file any pleading with the Court indicating he was unable to attend the hearing." We determine that the trial court did not abuse its discretion by proceeding to consider the motion to dismiss during the pretrial conference.

In its March 1, 2019 order, the trial court found the following concerning Mr. Dillmon's motion to dismiss:

> The motion to dismiss is not well taken. In reviewing the motion, it appears Mr. Dillmon is relying upon [Ski Chalet's] nonsuit of Joseph High. However, Mr. Dillmon's motion overlooks the fact that the complaint alleges specific conduct by Mr. Dillmon which has nothing to do with the cause of action against Mr. High. Accordingly, the motion to dismiss is **DENIED**.

On appeal, Mr. Dillmon has not presented any argument to support a conclusion that Ski Chalet's complaint failed to state a claim against him upon which relief could be granted. *See Trau-Med of Am.*, 71 S.W.3d at 696 ("It is well-settled that a complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of

31

facts in support of his or her claim that would warrant relief."). The trial court did not err in denying Mr. Dillmon's motion to dismiss.

## C. Subpoenas

Mr. Dillmon further contends that the trial court erred by quashing the deposition subpoenas he had caused to be issued upon Ski Chalet's counsel and the Daileys. In support of his contention, Mr. Dillmon relies on his assertion that the subpoenas were "lawfully executed" and again on his absence from the February 20, 2019 hearing. On February 12, 2019, Ski Chalet filed a motion to quash and for protective order, informing the court that Mr. Mansfield and the Daileys had been served with "Subpoenas *Duces Tecum*," on February 11, 2019. Mr. Dillmon does not dispute that these subpoenas were actually meant as deposition subpoenas rather than as requests for documents.

Following Mr. Dillmon's absence at the February 20, 2019 hearing, the trial court ruled in its February 25, 2019 order that Mr. Dillmon's requested deposition subpoenas as to Mr. Mansfield and the Daileys were quashed "until and unless Mr. Dillmon requests to argue his position at a subsequent hearing . . . ." As noted in prior sections of this opinion, Mr. Dillmon then did not appear for the pretrial conference and did not file a proper pleading or documentation concerning his failure to appear.

Concerning the protection of persons subject to subpoena, Tennessee Rule of Civil Procedure 45.07 provides in pertinent part:

(1)    A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a non-party witness subject to the subpoena and shall provide the non-party witness at least twenty-one (21) days after service of the subpoena to respond, absent agreement of the non-party witness or a court order.

(2)    A non-party witness commanded to give deposition testimony . . . shall serve on the party or attorney designated in the subpoena a written objection, if any, to having to give testimony . . . . Such objection must be served on the party or attorney designated in the subpoena within twenty-one days after the subpoena is served.

(3)    At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling testimony, production or inspection.

(4) The Court may: (1) grant the motion to compel testimony or production or inspection, or modify the subpoena if it is unreasonable and oppressive . . . . The timely service of an objection obviates the need for compliance with the deposition subpoena pending further order of the court.

"The decision of the trial court in discovery matters will not be reversed on appeal unless a clear abuse of discretion is demonstrated." *Artist Bldg. Partners v. Auto-Owners Mut. Ins. Co.*, 435 S.W.3d 202, 220 (Tenn. Ct. App. 2013) (quoting *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992)).

Setting aside for a moment that compelling Mr. Mansfield to testify could have arguably disqualified him as counsel for Ski Chalet, we note that Mr. Mansfield and Mr. and Ms. Dailey would have been non-party witnesses in this action. Mr. Dillmon did not allow twenty-one days after service of the subpoenas for a response as required by Rule 45.07(1). However, Ski Chalet filed a timely objection to Mr. Dillmon's deposition subpoenas pursuant to Rule 45.07(2). Although Mr. Dillmon sent a letter to the trial court judge in response, he did not file a proper motion to compel testimony pursuant to Rule 45.07(3). Nonetheless, the trial court allowed an opportunity for Mr. Dillmon to argue in support of the deposition subpoenas at the pretrial conference, but Mr. Dillmon failed to appear at the pretrial conference and failed to file a pleading or documentation explaining his failure to appear. Following the pretrial conference, the trial court ultimately quashed the deposition subpoena as to Mr. Mansfield in its order entered on March 1, 2019.

Furthermore, as the trial court referenced in its order denying Mr. Dillmon's motion for new trial, Mr. Dillmon filed his motion seeking the disqualification of Mr. Mansfield as Ski Chalet's counsel on February 7, 2019, the day before he caused the deposition subpoena to be issued to Mr. Mansfield. *See Whalley Dev. Corp. v. First Citizens Bancshares, Inc.*, 834 S.W.2d 328, 330-31 (Tenn. Ct. App. 1992) ("Under the Code of Professional Responsibility, Rule 8, Rules of the Supreme Court, . . . if the attorney learns he will be called as a witness by opposing counsel, the attorney may continue to represent his client until it becomes apparent that his testimony is or may be prejudicial to his client.").[8] Mr. Dillmon specifically asserted in his motion that Mr. Mansfield must be disqualified because he would be a witness in the case. We find no abuse of discretion in the trial court's order quashing Mr. Dillmon's deposition subpoenas.

---

[8] As this Court further explained in *Whalley*: "While the Code does not prohibit absolutely an attorney to testify at a trial where he is also serving as an advocate, such practice should only be permitted under the most exceptional circumstances." *Whalley Dev. Corp.*, 834 S.W.2d at 331.

## VII. Additional Post-Trial Motions

### A. Motion for Production of Trial Transcript

Mr. Dillmon contends that the trial court abused its discretion by denying his post-trial motion for production of the trial transcript. In its May 3, 2019 order denying Mr. Dillmon's motion for production, the trial court relied on the rule set forth in *Beef N' Bird of Am., Inc. v. Cont'l Cas. Co.*, 803 S.W.2d 234, 240 (Tenn. Ct. App. 1990) to find as follows:

> Since Mr. Dillmon failed to appear for the trial on March 13, 2019, he did not engage the services of the court reporter, and [Ski Chalet] has refused to authorize the court reporter to release the transcript to Mr. Dillmon even if he pays the per diem and for the transcript.

> Mr. Dillmon asserts that he needs the transcript in order to proceed with his appeal. Rule 24 of the Tennessee Rules of Appellate Procedure discusses the requirement to provide a stenographic report of the evidence of the proceedings if it is *available*. The issue raised in this case concerns the intent of the word "available[."] The case of Beef N' Bird of America, Inc., for Use and Benefit of Galbreath v. Continental Cas. Co., 803 S.W.2d 234 (Tenn. Ct. App. 1990) provides the answer to this question. In that case, the Court of Appeals held:

> > In civil cases, this court notes judicially the practice of parties to engage and pay a stenographer a "per diem" to attend and record the evidence and proceedings. If only one party engages and pays the stenographer, it appears that the verbatim record of evidence and proceedings would be available to that party by contract. If more than one party jointly engage and pay the stenographer, it would appear that the verbatim record would be available to any one of the participating parties by contract. Inability of a participating party to pay for the transcription might make it unavailable to him.

> > **A party who does not join in the engagement and payment of a stenographer has no contract right to require the stenographer to transcribe the record which is therefore unavailable to him unless and until made**

34

> **available to him on terms satisfactory to the stenographer**
> **and the party or parties who engage the stenographer.** Id.
> at 240.
>
> In the case at bar, neither the stenographer nor [Ski Chalet] has
> agreed to any terms for the transcript. Accordingly, this Court has no
> authority to require the stenographer to transcribe the record on behalf of
> Defendant Dillmon.

(Emphasis in trial court's order.)

We agree with the trial court. Inasmuch as Mr. Dillmon did not participate in the engagement of the court reporter, the resultant trial transcript was not available to him. *See, e.g.*, *Sizemore v. Sizemore*, No. E2005-01166-COA-R3-CV, 2007 WL 2198358, at *8 (Tenn. Ct. App. July 30, 2007) (determining in a divorce action that because the wife "engaged the services of the court reporter" and the husband "did not participate," the husband had "no contractual right to require the court reporter to provide a verbatim transcript" (citing *Beef N' Bird of Am.*, 803 S.W.2d at 240)). Mr. Dillmon is not entitled to relief on this issue.[9]

### B. Motion for Recusal of the Trial Court Judge

Mr. Dillmon asserts throughout his appellate briefs that the trial court demonstrated bias against him and that various rulings should be reversed due to this alleged bias. Having previously determined that the emailed "motion" for the trial court judge's recusal that Mr. Dillmon sent in March 2013 was not a properly filed motion pursuant to Tennessee Supreme Court Rule 10B, we note that the only motion for the trial court judge's recusal that Mr. Dillmon actually filed in this matter was filed after he had perfected the notice of appeal to this Court. For the purposes of clarity and to prevent prejudice to the judicial process, *see* Tenn. R. App. P. 13(b), we address here the trial court's finding in its July 29, 2019 order that it did not have subject matter jurisdiction to consider Mr. Dillmon's post-trial motion for recusal.

In its July 29, 2019 order, the trial court relied on this Court's holding in *First Am. Trust Co. v. Franklin-Murray Dev. Co.*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001), which provided in relevant part:

---

[9] We note also that the trial transcript would have been unlikely to shed any light on the issues on appeal because the issues involve Mr. Dillmon's failure to appear and his pretrial and post-trial motions rather than the proof presented at trial.

35

> [O]nce a party perfects an appeal from a trial court's final judgment, the trial court effectively loses its authority to act in the case without leave of the appellate court. Perfecting an appeal vests jurisdiction over the case in the appropriate appellate court. An appellate court retains jurisdiction over a case until its mandate returns the case to the trial court. These principles keep cases together during the appellate process and prevent undesirable consequences of permitting a case to be pending in more than one court at the same time.

(Footnotes and internal citations omitted.)[10] "A judgment or order entered by a court without subject matter jurisdiction is void, and we must vacate such an order and dismiss the case without reaching the merits." *Born Again Church & Christian Outreach Ministries, Inc. v. Myler Church Bldg. Sys. of the Midsouth, Inc.*, 266 S.W.3d 421, 424 (Tenn. Ct. App. 2007) (citing *First Am. Trust Co.*, 59 S.W.3d at 141). We agree with the trial court's determination that it did not have subject matter jurisdiction to consider Mr. Dillmon's motion for recusal filed after he had filed his notice of appeal with this Court.

## VIII. Attorney's Fees on Appeal

Finally, Ski Chalet contends that this appeal is frivolous pursuant to Tennessee Code Annotated § 27-1-122 (2017), thereby requesting an award of damages, including attorney's fees and expenses, on appeal. Tennessee Code Annotated § 27-1-122 provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

As this Court has previously explained:

> Parties should not be forced to bear the cost and vexation of baseless appeals. Accordingly, in 1975, the Tennessee General Assembly enacted Tenn. Code Ann. § 27-1-122 to enable appellate courts to award damages against parties whose appeals are frivolous or are brought solely for the

---

[10] However, as this Court noted in *First Am. Trust Co.*, "perfecting an appeal does not prevent the trial court from acting with regard to ancillary matters relating to the enforcement or collection of its judgment." 59 S.W.3d at 141 n.8.

purpose of delay. Determining whether to award these damages is a discretionary decision.

A frivolous appeal is one that is devoid of merit, or one that has no reasonable chance of succeeding.

*Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003) (internal citations omitted).

Exercising our discretion and considering Mr. Dillmon's status as a self-represented litigant, we determine that this appeal was not frivolous or taken solely for delay. We therefore decline to award attorney's fees or expenses as damages on appeal to Ski Chalet.

## IX. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. We deny Ski Chalet's request for attorney's fees and expenses on appeal. We remand this case for enforcement of the judgment and collection of costs below. Costs on appeal are taxed to the appellant, J. Ron Dillmon.

_____
THOMAS R. FRIERSON, II, JUDGE